

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
SEP 23 2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

----------------------------------------------------------------X

| | | |
|---|---|---|
| Kenneth Sesley Nave, MD | : | Civil Complaint <u>1:22-cv-03556</u> |
| | : | The Honorable |
| Plaintiff, | : | Judge Franklin U. Valderrama |
| | : | |
| VS. | : | |
| | : | Amended Complaint |
| Lamont Pugh, HHS | : | Jury Trial Demanded |
| Christy Wells, HHS | : | Biven's Action and 1983 Claim |
| Peter Theiler, HHS | : | |
| Cathy Barbour, FBI | : | Complaint against each defendant |
| (See Attachment 1 for complete list of names) | : | in their Individual Capacity |
| | : | |
| Defendants. | : | |

----------------------------------------------------------------X

## COMPLAINT

**Now Comes** plaintiff Kenneth S. Nave, MD, by Pro Se appearance, before the Honorable Judge Franklin U. Valderrama, and complains of Defendants and states as follows:

### PRELIMINARY STATEMENT

1. On April 13, 2013, plaintiff was arrested at Miami International Airport under an arrest warrant and Civil Complaint claiming that the plaintiff had illegally used the DEA Registration of another physician, Elliott McKinley Fourte, MD. The defendants filed the complaint before they had obtained the necessary evidence to meet the threshold of proof "Beyond a Reasonable Doubt" of the plaintiff's alleged guilt regarding said allegations.

2. Prior to the plaintiff's arrest, multiple named defendants had conspired to entrap the plaintiff in an ongoing criminal enterprise alleged to have occurred at Sacred heart Hospital (SHH). SHH had been under investigation by the Medicare Fraud Task Force/Healthcare Fraud Taskforce for over ten years due to unsubstantiated allegations that SHH healthcare providers were conducting unnecessary and dangerous surgeries and medical procedures on patients admitted to SHH. Also alleged was that the owner of SHH, Edward Novak, was paying SHH medical staff to admit said physician's patients to SHH through an

elaborate kickback scheme involving ghost teaching positions with the institution (SHH) and $2,000.00 per month phony sublease agreements at said physicians' medical offices.

3. Not only were there allegations of the conducting of unnecessary surgeries and procedures at SHH, there also existed suspicions that multiple SHH patients had been injured and/or had died secondary to these criminal actions taken by the healthcare professionals conducting said procedures.

4. The purpose behind the defendants' conspiracy to entrap the plaintiff in healthcare fraud crimes was;

(a) to demonstrate, through the plaintiff's newly formed relationship with SHH, a pattern of corruption at SHH for which plaintiff could be prosecuted by the defendants

(b) to use the plaintiff, upon indictment, as a source of information regarding the ongoing criminal activity at SHH and by SHH administrators and owners

(c) to gain evidence of healthcare professionals at SHH committing the previously mentioned unnecessary surgeries and medical procedures, and

(d) for said agents to gain financially through bonuses said agents would be paid through the recoupment of monies paid to individuals, such as the plaintiff and individuals connected to SHH who, upon conviction of stated crimes, would have to forfeit paid monies.

5. As a result of the actions of the defendants the plaintiff lost his medical license, was forced to close his medical practice, spent over $150,000.00 in legal fees and has been the subject of public shame and ridicule. The plaintiff also estimates that the revenue loss secondary to this failed attempt by the defendants to prosecute the plaintiff for these alleged crimes to be in excess of $29,000,000.00 (twenty-nine million dollars).

6. The Criminal Complaint against the plaintiff ultimately led to an indictment (13 CR 313), the latter of which was dismissed with prejudice by the Honorable Judge Sharon Johnson-Coleman on July 29th, 2015.

7. Despite having no felony convictions against him, and no known pending criminal charges against him, the plaintiff continues to suffer financially and psychologically due to the ongoing actions of the defendants. The defendants have refused to accept their negligent failings in the attempted prosecution of the plaintiff and said defendants have balked at all requests to again make the plaintiff whole.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this Complaint under the Fourth and Fifth Amendments to the United States Constitution and 28 U.S.C. § 1331. 7. Venue is properly with this District under 28 U.S.C. § 1402(b) as the prosecution of Dr. Nave occurred in the Northern District of Illinois and the defendants' acts that are the subject of this Complaint occurred in this District. The State of Illinois and the Illinois Department of Financial and Professional Regulation are being sued under 42 USC § 1983.

## PARTIES

9. Plaintiff is a United States Citizen and resident of greater Chicagoland.

10. The named Defendants again, are/were, individuals operating as the Medicare Fraud Taskforce/Healthcare Fraud Taskforce (MCFTF/HCFTF) and employed by their respective federal and/or, other local, State or Federal governmental law enforcement agencies. The named Defendants, during the noted period, were engaged in an investigation of SHH for alleged Healthcare Fraud crimes. This complaint is brought as a joint Bivens' action and a 1983 Claim as, also named as defendants are employees of the State of Illinois and the IDFPR, with reasons outlined in this complaint.

## FACTUAL ALLEGATIONS

11. The MCFTF/HCFTF is a clandestine conglomeration of DOJ agencies created in 2007 and charged with the responsibility of finding and prosecuting Medicare, and other types of healthcare fraud through the alleged scientific, forensic use of data analysis and community policing. Minority healthcare providers have alleged that the investigative template used by the MCFTF/HCFTF unfairly targets racial and ethnic minority healthcare companies as most independent small business providers of direct and indirect healthcare services are minorities.

12. On or about April 10, 2013, the defendants manipulated a Grand Jury convened in the Northern District of Illinois, Eastern Division, to return a Criminal Complaint against the plaintiff charging plaintiff with 5 counts of the unauthorized use of the DEA Registration of another physician, namely, Elliott McKinley Fourte (EMFMD).

13. The plaintiff was arrested at Miami International Airport on April 13, 2013 and later arraigned in Chicago. The Criminal Complaint and subsequent indictment falsely claimed that Dr. Nave, while on the medical staff of SHH, had used the DEA registration of EMFMD while managing patients of HCC.

14. The plaintiff's medical license was suspended on April 13, 2013.

15. The defendants were intentionally negligent in failing to secure sufficient evidence to substantiate the Criminal Complaint/Indictment prior to the filing of said complaint/indictment. The defendants later realized that no orders for prescription narcotics were submitted by the plaintiff under the DEA registration of EMFMD.

16. The defendants later filed the aforementioned indictment against the plaintiff using the same five HCC patients who had been inpatients at SHH and had been listed in the original Criminal Complaint. This was done to make it appear that there had been no relevant changes from the criminal complaint to the indictment; a clear act of conspiratorial genius.

17. After multiple failed requests by AUSA's (defendants) that the plaintiff accept a plea agreement on the related charges and cooperate with the DOJ's prosecution of other persons linked to the SHH scandal, the indictment against Nave was dismissed with prejudice.

18. AUSA defendants again, in a conspiratorial manner, attempted to secretly renege on the agreement to dismiss the indictment against the plaintiff "with prejudice and slip a request to dismiss the indictment "without prejudice" past the defense attorney overseeing the criminal case against Nave. This attempt at legal "trickery" was intercepted and countered

by the plaintiff's defense attorney. The indictment against the plaintiff was ultimately dismissed with prejudice.

19. Even though the defendants who served as prosecutors in the plaintiff's criminal prosecution lacked sufficient evidence to prove the defendant's guilt "beyond a reasonable doubt", prosecuting attorneys for the IDFPR chose to file administrative charges against the plaintiff, maintaining the suspension on the plaintiff's medical license, disregarding the substantial evidence revealed during the plaintiff's pre-trial discovery period in the referenced criminal proceedings exonerating the plaintiff.

20 In or around August of 2015 defendants Cathy Barbour and EMFMD conspired with the prosecutors from the IDFPR (Lara Forester and Vladimir Lozovskiy) in testifying against the plaintiff at an administrative hearing to restore the plaintiff's medical license. No definitive evidence was presented at the administrative hearing.

21. The "preponderance of evidence" from the administrative trial was likewise in favor of the plaintiff but prosecuting attorneys for the IDFPR chose to continue punishment of the plaintiff and maintain the summary suspension on the plaintiff's medical license through April 2020.

22. EMFMD's testimony was suborned testimony.

### Ongoing Injuries to Dr. Nave

23. Despite the dismissal with prejudice of the criminal case against Dr. Nave he is still – 9 years later - unable to practice medicine due to unreasonable delays in restoring his Illinois State Medical License, which was suspended solely due to the conspiratorial and fraudulent actions of defendants.

### Matters of Fact and Law

24. Statutes of limitations do not apply to this case under the Doctrine of Equitable Tolling. The initiating of the Civil Action was delayed by multiple factors which include:

(a) The injury to lead plaintiff Nave was economic as well as psychological leading to the re-emergence of said plaintiff's Bipolar II disorder, and a period of profound disability making Nave's ability to seek legal justice in this matter impossible.

(b) Attempts by lead plaintiff Nave to obtain legal representation were not accepted by multiple attorneys and law firms because of the nature of the matter.

25. Other quintessential questions of fact and law are:

(a) Whether the defendants of this complaint, through bonuses or other benefits, gained by the defendant's potential successful prosecution of these individuals (i.e., SHH owner Ed Novak, and other now convicted physicians and administrators of SHH), unjustly enriched these defendants, and if said bonuses and benefits were/are lawful, or now require forfeiture due to the allegations set to be proven in this complaint.

(b)     Whether, as a result of this horrific and wrongful conduct by the defendants, the plaintiff is entitled to restitution or other equitable relief, or to compensatory and/or punitive financial damages.

(c)     As many members of the defendant class are the Federal Government, State Government, and/or employees of these governments and, as members of this defendant class, are said entities and persons subject to civil action or are such defendants exempt by coverage under the Federal Torts Claims Act (FTCA). Understood is the fact that the FTCA allows for legal remedy in suing the Federal Government or its employees when the actions of said entities or employees lead to "Injury or loss of property, or personal injury, or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances were the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". The actions of the defendants named in this civil action meet and surpass the threshold of negligence and egregiousness required to file this civil action.

## Count I
## Conspiracy to Commit the Depravation of Civil Liberties

26.     Plaintiff incorporates by reference paragraphs 1 through 25 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count I.

27.     The actions of the defendants, individually and collectively, violated the plaintiff's right to be free from malicious prosecution as outlined under the IVth Amendment of the US Constitution.

28.     As prosecutors and case agent/investigators, defendants initiated the prosecution of plaintiff Nave without probable cause and acted with improper motives and purposes.

29.     Plaintiff Nave suffered a deprivation of liberty because of the prosecution. The charges against Nave were dismissed prior to trial and, therefore, terminated favorably to Nave.

30.     Plaintiff Nave's right to the pursuit of property was also deprived of him by the conspiratorial actions of the defendants.

31.     Plaintiff Nave suffered the loss of personal papers and property in the confiscation of his patient files and personal papers.

32.     Plaintiff Nave suffered an additional depravation through the unlawful monitoring of his phone calls and other communications.

## Count II
## Depravation of Civil Liberties

33.     Plaintiff incorporates by reference paragraphs 1 through 32 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count II.

34. The actions of the defendants, individually and collectively, violated the plaintiff's right to be free from malicious prosecution as outlined under the IVth Amendment.

35. As case agents/investigators, defendants initiated the prosecution of plaintiff Nave, without probable cause and acted with improper motives and purposes.

36. Plaintiff Nave suffered a deprivation of liberty as a result of the prosecution. The charges against Nave were dismissed prior to trial and, therefore, terminated favorably to Nave.

37. Plaintiff Nave's right to the pursuit of property was also deprived of him by the conspiratorial actions of the defendants.

38. Plaintiff Nave suffered the loss of personal papers and property in the confiscation of his patient files and personal papers.

39. Plaintiff Nave suffered an additional depravation through the unlawful monitoring of his phone calls and other communications.

## COUNT III

### Aggravated abuse of an elderly person or disabled adult

40. Plaintiff incorporates by reference paragraphs 1 through 39 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count III

41. Plaintiff Nave is a disabled person diagnosed with Major Depressive Disorder/Bipolar II (MDD/BPII). The unconstitutional and illegal actions of the defendants in depriving plaintiff Nave of his U.S. Constitutionally guaranteed Civil Liberties created a severe mental/psychological stress upon this plaintiff and led to the re-emergence of the symptoms of mental illness. The defendant's actions toward plaintiff Nave amounts to the aggravated abuse of a disabled adult.

## COUNT IV

### Obstruction of Justice, Malicious Prosecution, and Abuse of Process

42. Plaintiff incorporates by reference paragraphs 1 through 41 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count II.

43. Plaintiff Nave, having been unsuccessfully prosecuted by the defendants in this class action complaint, had significant access to documents related to the criminal activities of many of the defendants named in this complaint during the discovery phase of Nave's failed prior criminal proceedings.

44. Defendant EMFMD, as previously mentioned, was an employee/partner of plaintiff Nave's at Nave's medical Practice, HCC. EMFMD was also appointed to the medical staff of SHH.

45. Discovery evidence reviewed during the before mentioned criminal proceedings revealed that EMFMD was engaged in prescription narcotic diversion, a felony crime by 21 USC § 843(a)(3).

46. Defendants of this complaint conspired with EMFMD to not prosecute said defendant EMFMD in exchange for EMFMD's suborned testimony against plaintiff Nave in both Nave's criminal case (Grand Jury Testimony) as well as Nave's later administrative hearing with the IDFPR regarding the reinstatement of Nave's medical license.

47. The use of EMFMD to criminally and administratively prosecute plaintiff Nave with perjured and suborned testimony and allowing defendant EMFMD to escape prosecution for the crime of prescription narcotic diversion in exchange for EMFMD's testimony against plaintiff Nave before the Grand Jury and, again, at the administrative hearing regarding plaintiff Nave's medical license, makes defendants EMFMD, Barbour, Wells, and Lozovskiy guilty of Obstruction of Justice, Malicious Prosecution, and Abuse of Power.

48. Defendant Janita Simpkins, MD, former employee/partner at HCC, is quoted as saying on transcripts related to the criminal prosecution of plaintiff, "I don't recognize 95% of these prescriptions" referring to written prescriptions for narcotic medications shown to her by investigators and prosecutors for the AUSA/DOJ. Simpkins was aware of all narcotic prescriptions issued to patients of HCC under her DEA registration. Lying about this fact is also an act of obstruction of Justice and makes Simpkins complicit in the conspiracy to Deprive Nave of his Civil Liberties.

## COUNT V
## Slander/Libel/Defamation of Character

49. Plaintiff incorporates by reference paragraphs 1 through 48 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count V.

50. On or around April 13, 2013, defendants verbally told media representatives that the medical license of plaintiff Nave, who on April 13, 2013, had been arrested and charged in a criminal complaint 13 CR 313, had been previously disciplined for misuse of said plaintiff's prescribing activity, a false act of slander.

51. Plaintiff Nave, prior to the now dismissed attempt at criminal prosecution, had never faced disciplinary action related to his prescribing of any medication.

52. Area news publications printed the slanderous remarks referred to said news publications by the defendants as fact; an act of libel and defamation.

53. A to-the-date internet search engine request on Google or Safari (and others) of plaintiff Nave immediately lists the false, libelous, and defaming statements initiated by the defendants and later printed in their newspapers as fact.

54. Defendants have made no attempt to have the false, libelous, and defaming statements removed from internet search engines, nor have said defendants attempted to publish statements correcting the false, libelous, and defaming statements printed in their publications. Initial communications between the DOJ employee that provided media outlets with the false information on plaintiff Nave were not vetted by news media outlets and such false statements were intentionally designed to cast Nave in a bad light, part of the defendant's conspiracy.

55. Plaintiff Nave continues to suffer injury to his reputation, family name, and credibility, by the false, libelous, and defaming statements initiated by the defendant's slanderous communication to the news media, which were publicly solidified by the newspapers named in this complaint. Nave has, and continues to, also suffer profound economic loss by employment offers being rescinded upon internet revelations of the false, libelous, and defaming statements printed in the defendant's publications.

## Count VI
## Perjury

56. Plaintiff incorporates by reference paragraphs 1 through 55 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count VI.

57. The defendants intentionally and knowingly, under oath, gave false statements pertaining to plaintiff Nave's actions with respect to the criminal case 13 CV 313, as well as said plaintiff's administrative hearing to restore plaintiff's medical license.

58. It is believed that defendant Barbour gave false testimony before a court magistrate to obtain the surveillance warrant spoken of earlier in this complaint. It was seen through review of the Grand Jury minutes from the testimony given by defendants Wells and EMFMD that defendant Wells gave false testimony before the Grand Jury, and EMFMD gave suborned testimony before this Grand Jury.

59. Defendant Barbour gave false testimony during the administrative hearing for the reinstatement of plaintiff Nave's medical license on a date on or near September of 2016.

60. Defendants Barbour, EMFMD, and Wells committed acts of Perjury and are guilty of these felony criminal acts.

## Count VII
## Conspiracy to Entrap and/or Frame-up

61. Plaintiff incorporates by reference paragraphs 1 through 60 as if set forth fully herein. Also referenced are paragraphs 1 through 191 of the attached Class Action Complaint # 1:22-cv-03991 are relevant to Count VII.

62. Defendants misled plaintiff Nave throughout the investigation of SHH, never telling said plaintiff of any illegal schemes of which they hoped said plaintiff would knowingly and willingly become involved.

63. The use of informants to induce evidence of criminal activity by a targeted citizen requires informing the targeted person of the opportunity for the targeted person to knowingly become involved in an illegal scheme, thereby providing targeted person with an opportunity to willingly engage in criminal activity. These requirements are foundational regarding the use of informants by law enforcement officers.

64. Defendants attempted to persuade plaintiff Nave to enter an illegal contract with SHH in which SHH would fictitiously "rent" space in plaintiff Nave's medical offices for $2,000.00 (two-thousand dollars) per month. However, defendants never told Nave that the contract was a sham, that the rental space would never become occupied, and that the $2,000.00 (two-thousand dollars) per month payment would be a kickback2for said plaintiff admitting patients to SHH.

65. Other medical professionals affiliated with SHH were being paid $2,000.00 (two-thousand dollars) per month as a financial kickback for said professional's willful admission of patients to SHH, under the guise of the rental of space at said professional's medical facility.

66. Through the instructions of defendant Barbour and possibly other members of the MCFTF/HCFTF, defendant NCINV and eventual NCIAP made multiple attempts to steer plaintiff Nave into accepting a contract to rent space in plaintiff Nave's medical office with no intention of utilizing the proposed rented space, with the monthly $2,000.00 payment intended

to be used as evidence of plaintiff Nave's acceptance of a financial kickback in support of said plaintiff Nave's professional affiliation with SHH, i.e., plaintiff's continued admitting of patients of HCC to SHH.

67. Informant defendants never informed plaintiff Nave that the monthly payments of $2,000.00 were an illegal way of "kicking back" to Nave a financial gratuity in exchange for said plaintiff's continued admissions to SHH.

68. Plaintiff Nave never entered into any financial agreements that could be considered illegal gratuities for said plaintiff's work with SHH. Other physicians affiliated with SHH entered similar contracts with SHH and were later indicted, prosecuted, and found guilty of accepting financial kickbacks from SHH.

69. Had plaintiff Nave agreed to a contract and accepted any of the proposed money, that being the $2,000.00 monthly "rent" payment, plaintiff Nave would have been indicted and convicted for participating in a financial kickback scheme.

70.. The defendants named in this complaint, through the activities outlined in paragraphs 1 through 67, are guilty of conspiring to entrap and frame plaintiff Nave, first, in a criminal financial kickback scheme then, secondly, in an unsubstantiated claim of the illegal use of EMFMD's DEA registration.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff prays for relief as follows:

1. As plaintiff's medical practice, HCC, was on pace to earn $1,000,000.00 (one million dollars) in gross revenue in 2013, and as HCC had demonstrated a 20% (twenty-per cent) increase in gross revenue over the previous 5 (five) years, plaintiff Nave's estimated losses over 9 (nine) years amount to $29,045,126.60 (twenty-nine million, forty-five thousand, one-hundred and twenty-six dollars and sixty cents). Additional requests to be punitive damages, attorney's fees, and other financial losses attributable to defendants.

2. Punitive damages as to all Defendants.

3. An injunction requiring all Defendants to return to Dr. Nave all personal property and or information in their custody or control obtained from Dr. Nave's electronic devices and communications, and, to an extent that information cannot be returned expunge or otherwise destroy that information.

4. Immediate Injunctive relief against the defendants who are/were employees of the IDFPR on behalf of Plaintiff Nave, due to these IDFPR's employee's involvement in the conspiracy to Deprive plaintiff of his Civil Liberties, with the following order:

    (a) Appointment of an independent legal mediator to review the handling of plaintiff Nave's disciplinary case with the IDFPR from the suspension of said plaintiff's medical license on April 13, 2013 through the last findings of 2018 with a report of any inconsistencies or evidence of abuse of process by prosecuting attorneys of the IDFPR in their dispensation of punishment and/or any other administrative legal irregularities on the part of the department.

    (b) Establishment of a clear pathway to medical relicensing for plaintiff Nave with the IDFPR being responsible for all costs including licensing fees, SPEX examination fees (up to three attempts if plaintiff Nave is initially unsuccessful), and any other costs accrued in the process of medical relicensing.

5. Reimbursement and/or payment of all attorney's fees and costs.

6. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial

Dated: 9/23/22    Respectfully submitted,

By _____

Kenneth S. Nave, MD

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: 9/23/22

Kenneth S. Nave, MD

# Defendant List 2
# 1:22-cv-03556
# Exhibit A

Lamont Pugh, HHS

Christy Wells, HHS

Peter Theiler, HHS

Cathy Barbour, FBI

Gary Shapiro, former US Attorney

Mario Treto, Jr., Director IDFPR

Lara Forester, former lead prosecutor, IDFPR

Vladamir Lozovskiy, lead prosecutor, IDFPR

Tara Reynolds, former AUSA

Ryan Hedges, former AUSA

Joel Hammerman, former AUSA

Noemi Velgara, non-confidential informant

Anthony Puorro, non-confidential informant

Elliott Fourte, MD, informant witness

Edward Novak, former owner, SHH

Janita Simpkins, MD, former employee, HCC

Crain's Chicago Business, Chicago Sun-times, Chicago Tribune

John Doe(s)

KSN